John M. Keane, S.
This proceeding is a final accounting made by the executors of the will of George M. Ely, deceased,'who died January 25, 1969 and who was the testamentary trustee under the will of Joseph S. O’Neil, deceased. The life beneficiary of the trust was Albert M. O’Neil, a brother of the decedent who had resided for many years in France, and who died there April 10, 1970. In order to understand the problems before the court, a brief recital of the facts is required.
By a decree of this court dated October 4, 1951, there were delivered to George M. Ely as testamentary trustee 1165 shares of stock of the Geo. F. O’Neil Realty Corporation valued at $163,100. Except for $581.36 of cash, these shares constituted the complete corpus of the trust. The principal now on hand of $180,818.90 represents proceeds received on a subsequent liquidation of these shares. The account filed also shows that *636 there is $48,717.05 on hand representing picóme undistributed to the life beneficiary, Albert M. O’Neil, during his lifetime.
From the period of October 4, 1951 to June 30, 1954 the account contains a separate summary statement concerning principal and income apparently made by the testamentary trustee while holding the original shares of stock in the corpus. The account states that the shares of the Geo. F. O’Neil Realty Corporation were liquidated sometime in 1956. The account then shows in detail all transactions from 1957 up to the present time.
On October 29, 1965, the testamentary trustee placed the corpus of the trust with First-City National Bank of Binghamton, N. Y. in a custodian account. Some of the confusion that may appear occurs because First-City National Bank of Binghamton, N. Y. is involved in three capacities; (1) as custodian of the trust corpus during the lifetime of the testamentary trustee; (2) as one of his coexecutors, and (3) as administrator of the estate of Albert M. O’Neil, deceased, the life beneficiary.
There are two questions before the court. Who is entitled to the $48,717.05 of undistributed income? Is it the estate of Albert M. O’Neil, the deceased life beneficiary, or is it the remaindermen named by the decedent, Joseph S. 0 ’Neil? Should commissions be allowed to the estate of the deceased testamentary trustee for services rendered during his lifetime? Finally, should compensation be allowed to the fiduciaries of the deceased testamentary trustee pursuant to subdivision 6 of iSCPA 2207?
The will of Joseph S. O’Neil, deceased, disposes of the remainder after the death of Albert M. O’Neil, the life beneficiary, as follows: “ Upon the death of the said Albert M. O’Neil, to pay over the principal and any undistributed income and depreciation reserve to my nephews and niece, Clendenin J. Ryan, now residing at 32 East 70th Street, New York, New York, George F. Ryan, now residing at 71 East 71st Street, New York, New York, Richard M. Ryan, now residing at 133 East 64th Street, New York, New York and Caroline O’Neil Foulke, now residing at 770 Park Avenue, New York, New York, share and share alike.”
The precise question concerns a construction of the words “undistributed income.” Does this mean “ undistributed ” literally, requiring payment to the remaindermen or does it really direct against an apportionment under section 204 of the Surrogate’s Court Act in effect at the time the will was probated?
*637 The guardian ad litem and other respondents who are the distributees in the estate of Albert M. O’Neil contend that the accumulated income received prior to April 10, 1970, the date of the death of Albert M. O’Neil, the life beneficiary, even though undistributed in the strict sense, should be payable to his estate rather than to the remaindermen. Additionally, they claim that income accrued up to the date of Albert M. O’Neil’s death should be paid to his estate.
Matter of Gans (7 Misc 2d 345, 346 [1957]) construed language almost identical with the excerpt from decedent’s will above. The court stated (p. 346): “Income actually received by the trustee during the trust period will not be payable to the remaindermen (Matter of Watson, 262 N. Y. 284) but income accruing during the widow’s lifetime and payable after her death will be distributable to the remaindermen by reason of the directions in the will [citing further cases].”
The fiduciary income tax returns for the years 1960 through 1970, when the life beneficiary died, show the net income deducted as distributable to the life beneficiary. With this deduction, the testamentary trustee paid no income tax as fiduciary during the lifetime of the life beneficiary. These fiduciary income tax returns show that all income received was constructively remitted to Albert M. O’Neil even though not segregated by the testamentary trustee.
The $48,717.05 shall be paid to the administrator of the estate of Albert M. O’Neil. The language in the will is sufficient to express a wish against apportionment of income otherwise mandated by section 204 of the Surrogate’s Court Act (now EPTL 11-2.1, subd. [c], par. [4]), so that all income accrued but unpaid at the death of Albert M. O’Neil as well as all income subsequently received shall be payable to the remaindermen. The court is aware that Matter of Sulima (193 Misc. 159 [1948]) reaches a different conclusion on language similar to the excerpt of the will quoted above.
A more complicated problem arises in determining what commissions, if any, should be allowed. The problem of computation of commissions on older trusts affected by the changing legislation of the 1940’s and 1950’s is approached by the Bar with the same enthusiasm that sailors of old ventured into the Sargasso iSea. To reach a conclusion, the court must be an archivist, because current texts have long ago discarded the historical material needed to put the statutes into proper sequence and perspective.
*638 The only objections filed to the account failed to differentiate between principal and income commissions, and state that all commissions ■ should be denied because (a) the testamentary trustee waived commissions by the manner in which he managed the trust, and (b) the testamentary trustee did not carry out his duties in a reasonable and proper manner.
There have been no objections or allegations that the conduct of the testamentary trustee resulted in any loss to the beneficiaries or that there was any improper management of the funds. The account shows that the principal presently on hand exceeds the appraised value of the stock which the trustee received in 1951.
Allowance of commissions to an estate of a deceased fiduciary is in the discretion of the court. (Matter of Barker, 230 N. Y. 364, 371 [1921].) Insufficient evidence has been submitted for the court to deny commissions to the estate of the deceased testamentary trustee. Receiving commissions only on principal shall be paid to the estate of the deceased testamentary trustee computed pursuant to subdivision 1 of SCPA 2308. Compensation shall be paid to the fiduciaries of the deceased testamentary trustee pursuant to subdivision 6 of SCPA 2207 in an amount equal to paying commissions computed pursuant to subdivision 1 of SCPA 2308.
Although the decedent died prior to August 31, 1956, no claim is being made for any annual principal commissions prior to 1957. Therefore, it is not necessary to apply the ratqs which were in effect prior to July 1, 1956.
Annual commissions payable out of principal to trustees were first authorized by chapter 694 of the Laws of 1943, and became section 285-a of the Surrogate’s Court Act. That method of computation was scrapped by chapter 582 of the Laws of 1948 which became the new 285-a.
As originally enacted by chapter 582 of the Laws of 1948, section 285-a provided as follows: “4. The commissions allowed by subdivision two hereof [relating to income] * * #. The commissions allowed by subdivision three hereof [relating to principal] * * #. A trustee shall not be deemed to have waived any commission by reason of his failure to retain the same at the time when he becomes entitled thereto; provided, however, that commissions payable under subdivision two hereof for any given trust year shall be allowed and retained only from income derived from the trust during such year and shall not be supplied from income on hand in respect of any other trust year. ’ ’ (Italics for emphasis.)
*639 By chapter 227 of the Laws of 1949, the last sentence was amended by replacing the italicized language with the words which have been italicized below as follows: ‘ ‘ provided, however, that commissions on income for any given trust year shall be allowed and retained only from income derived from the trust during such year and shall not be supplied from income on hand in respect of any other trust year.”
The language of the 1949 amendment remained unchanged by the amendments of chapter 931 of the Laws of 1956 in both section 285-a for persons dying before August 31, 1956 and section 285-b for persons dying after August 31, 1956. Finally, the language as enacted in subdivision 4 of SCPA 2308 and subdivision 4 of SOPA 2309 again follows the language of the amendment of 1949.
All of these references relate to disallowance of a/mmal commissions on income if sufficient income is not retained each year for their payment. Nowhere in the statute is there any indication that principal commissions would be denied for a similar reason. Of course, principal is not normally paid out each year. No annual principal commissions have been previously retained. This court determines that the estate of the deceased testamentary trustee is entitled to annual principal commissions as computed in the following paragraph.
Since annual principal commissions are being claimed only from the year 1957, the estate of the deceased testamentary trustee will be entitled to annual principal commissions of $2,076, said amount being computed at the rates shown in schedule “ H ” of the account ending with the year 1968. Compensation on principal is allowed to the fiduciaries of the deceased testamentary trustee who died January 25, 1969 in the amount of $358.75, said amount being equivalent to annual principal commissions for 1969 and the first quarter of 1970 prior to the death of Albert M. O’Neil, the life beneficiary.
Now the question of income commissions must be considered. Denial of income commissions at a later date when no income has been retained from that particular year first appeared in the statute by chapter 202 of the Laws of 1936 which amended subdivision 7 of section 285 of the Surrogate’s Court Act to read as follows: “7. * * * if such executor, trustee or guardian does not render such annual account or inventory, nor retain his commissions upon his annual account or inventory, he shall be allowed out of income then on hand, if any, upon his judicial settlement, his commissions upon the total income *640 from any money or property then payable to such beneficiary as unpaid income.”
By chapter 593 of the Laws of 1938 the language of subdivision 7 of section 285 was changed and the significant excerpt reads as follows: “ If the income on hand for any given year is insufficient to pay the uncollected commissions on the income of that year such deficiency shall not be supplied from income on hand in respect of any other year.” A footnote to chapter 593 in the Official Session Laws shows clearly the reason for the change in the following language: “ The proposed legislation which has the approval of the Executive Committee of the Surrogate’s Association was designed to restate the text of the subdivision so that no misunderstanding thereof is possible. By reason of the proposed amendment any sum which at the time of the judicial settlement may be on hand as income collected in the particular year for which income commissions are claimed will alone be available for commissions allowable for such year. If the income on hand at the time of the judicial settlement does not include any moneys from years for which commissions are claimed, none can be allowed. If the money on hand as income does contain funds from the years for which commissions are claimed, such commissions may be allowed but in no event beyond the amount of money on hand for such year. In other words, the rule of waiver still stands in respect of the whole or a part of any commissions that would have been collectible for years in which not enough money is on hand at the time of the judicial settlement.”
Similar language remained in section 285 until it was replaced by SOPA 2307 where it appears in subdivision 4.
On September 1,1943 chapter 694 of the Laws of 1943 became effective as section 285-a of the Surrogate’s Court Act which provided a separate method for computation of commissions for testamentary trustees. No language appeared similar to that of subdivision 7 of section 285.
However, by chapter 139 of the Laws of 1944, a new subdivision 1C was added effective March 13, 1944 which contained language similar to former subdivision 7 of section 285.
As mentioned previously herein chapter 582 of the Laws of 1948 repealed the existing section 285-a and replaced it with a different method of computation. In the discussion herein about annual principal commissions, the relevant statutory language concerning income commissions appears and it is not necessary to repeat it.
*641 Chapter 931 of the Laws of 1956 amended, section 285-a and limited its provisions to wills of persons dying before August 31, 1956. It also added a new section 285-b which applied to wills of persons dying after August 31, 1956 and provided a whole new method again of computing commissions of testamentary trustees. Section 285-b at subdivision 4 contained the same restrictions about income commissions as at subdivision 4 of section 285-a. These sections on commissions to testamentary trustees remained until replaced by SCPA 2308 and 2309 respectively.
SCPA 2308 (subd. 4) which applies to the proceeding before the court continues the language about restrictions on income commissions that has developed as outlined above.
From all of the foregoing discussion it is clear that no annual income commissions are payable in any year when all the income of that year has been disbursed.
The summary statement from October 4, 1951 through June 30, 1954 shows that all of the income received was paid to the income beneficiary, except for $403.57 which was retained as commissions by the testamentary trustee. Annual commissions on income of $642 were taken in 1959 and $301.56 for 1960 according to the account.
The court, as indicated above, has examined the fiduciary returns for the calendar years of 1960 through 1970. During that period of time, there was deducted $787.50 on the fiduciary returns, characterized as commissions. Actually these were the charges paid to the bank as custodian which, in effect, were being paid by the testamentary trustee out of his annual income commissions. The fiduciary returns show that, except for these small charges, all of the remaining income each year was payable to the life beneficiary. To reinforce the position that all of the income was turned over to the life beneficiary except the amounts of custodian charges, the individual income tax returns of Albert M. O’Neil, the life beneficiary, for the years 1960 — 1970 report as income the exact amounts shown as deductions on the fiduciary returns.
Therefore, it appears that there is no income available out of which additional annual income commissions can be paid for the period ending with the death of the life beneficiary, because of the practice of crediting all of the income to the life beneficiary each year, even though the funds were not actually transmitted to France or credited to a separate account of the life tenant.
*642 No compensation under SOPA 2207 (subd. 6) shall be allowed to the fiduciaries of the deceased testamentary trustee in the amount of annual income commissions for the period subsequent to the death of the life beneficiary.