Edward M. Horey, S.
The proceeding before the court is for the determination of the validity of a claim asserted against the estate of a decedent who during his life was the beneficiary of a substantial testamentary trust.
The petition is brought by the executor of the estate of the deceased trust beneficiary. It seeks determination of the validity of the asserted claim in advance of judicial settlement. While such procedure is not generally available to a claimant against an estate, it is specifically authorized to be instituted by the executor or an administrator of an estate. (See SCPA 1809, subd 1.) The proceeding is properly before this court.
The facts in support of the petition have been agreed to by opposing counsel in a written stipulation with attending exhibits. The facts follow:
One Warren G. Horton, a domiciliary of Connecticut, died March 5, 1936. Under his will, duly admitted to probate in the State of Connecticut in 1936, he created a testamentary trust providing for payment of one third of the income to a life beneficiary, a nephew also named Warren G. Horton, a domiciliary of Cattaraugus County, State of New York. The instant *887 proceeding is brought in the Surrogate’s Court, Cattaraugus County in connection with the administration of the estate of this deceased nephew. This proceeding follows proceedings earlier brought in the Probate Court of Fairfield County, State of Connecticut, referable to intermediate and final accountings of the testamentary trustee, Chemical Bank.
The relevant and significant portion of the will creating the trust related to the computation of commissions of the trustee and the directed application of New York law in reference thereto, to wit: "And for its services as trustee, it (trustee) shall receive the same fees and commissions, and at the same rates, and to be computed in the same manner, for receiving and paying out the income of any trust, as shall be provided for by the laws of the State of New York in force at the time of my death for the fees and commissions upon income of testamentary trusts in the State of New York. But it shall not receive any fee or commission upon, or for receiving or paying out the principal or corpus of any trust.”
The life beneficiary, Warren G. Horton, died January 14, 1976. With his death, payments of income terminated as did the testamentary trust. The remaining principal of the trust was directed to be paid over to the designated remaindermen.
During the operation of the trust, the trustee filed intermediate accountings. In an account filed March 25, 1974 commissions on income were claimed by the trustee and the same were allowed in an amount which is not set forth in the stipulation of facts. For reasons not stated, it affirmatively appears, however, that only a portion of the commissions allowed on the March 25, 1974 accounting were paid by the trustee to itself. A sum of $1,158.05 of the commissions then allowed remains unpaid. On December 31, 1974, all income in the hands of the trustee was paid over to the life beneficiary, thus depleting any source of cash in the hands of the trustee for payment of the allowed, but uncollected $1,158.05 commissions.
Again, on December 13, 1975, the trustee paid over all trust income then on hand to the beneficiary, retaining no moneys for the payment of trustee’s commissions on income computed to be in the amount of $660.30 and purportedly due for the period extending from March 25, 1974 to January 14, 1976.
Discovering its failure to collect the noted allowed and allowable commissions, the trustee contained in its final account, filed with the Probate Court of Fairfield County, Con *888 necticut, a Schedule F-l. It is entitled "Amount due from Estate of Warren G. Horton, deceased, income beneficiary as of January 14, 1976, the date of his death, on account of overpayment of income as of December 31, 1975, the date of the last payment of income to which decedent was entitled”. After setting forth various calculations for receiving and paying trustee’s commissions for all beneficiaries, it concludes with the following entry:
"One-third ⅓ thereof due from Estate of Warren G. Horton
$1818.18
Plus: tax summary letter fee chargeable to Estate of Warren G. Horton
100.00
"Amount due from Estate of Warren G. Horton $1918.18”.
By an order dated February 22, 1977, the Probate Court of Fairfield County, Connecticut allowed the account as filed by the trustee and ordered that it be recorded. The final paragraph of that order contains the following: "This court further finds that Schedule F-l is computed in accordance with the terms of the will and the amount reflected thereon is due and payable to the trustee from the Estate of Warren G. Horton, deceased, income beneficiary”.
It is this order and the facts which give rise to it that form the basis of the trustee’s claim against the estate and the executor’s refusal to pay the same without judicial determination.
Under the stipulated facts the amount of the claim asserted is $1,818.35 representing the total of the allowed but unpaid commissions of $1,158.05 and $660.30 previously recited. The amount set forth as total unpaid commissions in Schedule F-l of the account on which the order of the Connecticut court was entered was $1,818.18. This court regards the discrepancy between the amount of commissions presently claimed of $1,818.35 and the amount of commissions purportedly allowed by a Connecticut court ($1,818.18) as "de minimis”. Further, it appears from the stipulated facts that the claim of $100 for a tax summary letter purportedly allowed under the Connecticut order is not now asserted by the claimant. Whether it has been abandoned or waived does not affirmatively appear. It is sufficient that it has not been asserted and is not now before this court.
*889 The first consideration must be given to the force and effect of the order of the Connecticut court. The order is unusual in form. It contains various findings of the court. The account was "found to be true”. The court found Schedule F-l setting forth the computation of commissions to be "computed in accordance with the terms of the will”. The court made a finding that the amount reflected in Schedule F-l was "due and payable to the trustee from the Estate of Warren G. Horton, deceased income beneficiary”. The only "ordering” provision contained in the order is that the account of the trustee "be recorded and kept on file in this court”.
The attorney for the trustee concedes in his memorandum that the order of the Connecticut Probate Court is not in such form as to be an enforceable judgment in the State of Connecticut. He concedes that a suit in the Connecticut Superior Court would be required to reduce the order of the Probate Court to an enforceable judgment in the State of Connecticut.
The attorney for the trustee urges that there are only two procedures available to be pursued by his client. He states that one alternative would be the commencement of an action in Connecticut to reduce the order of the Probate Court to judgment status there. This, he states, has not been done because of the inability of the trustee to obtain jurisdiction in Connecticut over the estate of the deceased New York life beneficiary. Alternatively, the attorney states that an action could be commenced in New York on the order of the Connecticut Probate Court. This, he avers, would require a trial de novo of the issues. This procedure has not been followed by the trustee for the reason that "it would involve an unnecessary expenditure of time and money”. For these reasons the Connecticut trustee has elected to appear and participate in the instant proceeding. Its Connecticut attorney has been admitted on order of admittance in hoc vice.
This court’s review of the applicable Connecticut law supports the statements of the trustee’s attorney that a suit in the Superior Court of Connecticut would be required to reduce the order of the Probate Court to a judgment enforceable by execution in that State. It is also true that a new and independent action could be instituted in the State of New York by the trustee on the basis of the order of the Probate Court of Connecticut.
What the court finds inaccurate in the contentions of the attorney for the trustee is his statement that the trustee has *890 been limited to the two allegedly ineffectual procedural remedies which have been described.
Section 1 of article IV of the Constitution of the United States generally called "the faith and credit” clause provides in relevant part that: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial proceedings of every other State”. To give practical application, meaning and procedural processes to implement this constitutional provision, in 1970, the Legislature of the State of New York adopted the "Uniform Enforcement of Foreign Judgments Act” (L 1970, ch 982, eff Sept. 1, 1970). The provisions of this act are contained in CPLR article 54, sections 5401 through 5408 inclusive.
Under the specific provisions of the Uniform Act, it is provided that a foreign judgment "means any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this state, except one obtained by default in appearance, or by confession of judgment”. (CPLR 5401).
As a consequence of the definition, the order of the Connecticut Probate Court, if not obtained by default in appearance or by confession, falls within the periphery of the Uniform Enforcement of Foreign Judgments Act. As such, it is amenable to the procedural process that the Uniform Act provides.
The procedural processing of a foreign judgment, decree or order is set forth in detail in CPLR 5402. There, it is provided that an authenticated copy of the foreign judgment, decree or order may be filed within 90 days of its authentication in the office of any county clerk in the State of New York. It is to be accompanied by an affidavit stating that the judgment, decree or order was not obtained by default in appearance or by confession of judgment; that it is unsatisfied in whole or in part; and it is to set forth the amount remaining unpaid and it is to allege that the enforcement of the judgment, decree or order has not been stayed. Finally, it is to set forth the last known address of the judgment debtor.
The Uniform Act then provides in detail for the effect of a foreign judgment, decree or order filed in accordance with the recited provisions. It provides that the county clerk "shall treat the foreign judgment [decree or order] in the same manner as a judgment of the supreme court of this state”. More significant, the act provides for the status of the filed foreign judgment, decree or order. It recites that such judg *891 ment, decree or order so filed "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of the supreme court of this state and may be enforced or satisfied in like manner”. (CPLR 5402, subd [b].)
Adopting the procedures of the Uniform Act to the case for decision, it appears that a filing of an authenticated copy of the order of the Connecticut Probate Court with any county clerk in the State of New York, together with the required affidavit stating the amount due and other required information would give such order the status of a judgment of the Supreme Court of the State of New York immediately enforceable by execution. Under the terms of the statute the foregoing result would apply despite the fact that the order of the Connecticut Probate Court, without additional suit and reduction to judgment in the Superior Court of Connecticut is unenforceable in that State. In brief, the provisions of the Uniform Act would improve the effect and finality of the order of the Connecticut Probate Court over that accorded it in Connecticut, the State of rendition. This is certainly a new and novel concept. Whether or not the Legislature of the State of New York envisioned any such bizarre result, it has, nevertheless, clearly provided for it. Re-examination by the Legislature of the Uniform Act and possible amendment thereof might be in order.
Absent the existence of the statutory exceptions, the New York "Uniform Enforcement of Foreign Judgments Act” provided a third available and practical procedural process to the trustee for enforcement of its order of the Connecticut Probate Court.
The stated statutory exceptions are to a foreign judgment, decree or order "obtained by default in appearance or by confession of judgment”. (CPLR 5401.)
The stipulated facts of the parties eliminate any question of confession of judgment.
The issue of default in appearance as the basis of the order of the Connecticut Probate Court is in issue, not as a defense to the appliation of the Uniform Enforcement of Foreign Judgments Act, the existence of which act it appears neither the executor nor the trustee was aware; rather, it is asserted as a defense to the application of the full faith and credit clause of the Federal Constitution which the Uniform Act seeks to implement.
*892 The order, finding the executor of the deceased beneficiary liable for distributed commissions, recites that notice of the time and place of the hearing at which this order was made "has been given as directed in an order of this court made the 14th day of October, 1976”.
The order of the Probate Court of Connecticut, dated October 14, 1976, has been submitted as a part of the stipulated facts. After reciting that an account of the trustee had been "exhibited” to the court "for allowance”, it ordered a hearing to be held on the allowance of the account on the 2nd day of November, 1976. It further ordered "that notice of such hearing be given both by publishing a “copy of this order in a newspaper having a circulation in said district, and by mailing a copy of this order, postage prepaid, to the beneficiaries under the trust to the legal representative of those who have died and to David R. Tobin, Esquire, Guardian ad Litem, at their last known addresses”.
It appears that the learned Connecticut Probate Court was in error in its reference to notice provisions which it had directed be given as a preliminary to the making and entry of an order assessing liability on the New York estate for overpaid trustee’s commissions. Overlooked by the Connecticut Probate Court was a later order which it had made directing notice of the hearing on the final account of the trustee.
Submitted to this court as a part of the stipulated facts is an order of the Connecticut Probate Court, dated January 24, 1977. This order recites the filing of the final account of the trustees. It fixed the date of February 8, 1977 for a hearing on the final account. It then ordered "that notice of such hearing be given by mailing a copy of this order, postage prepaid, td Salamanca Trust Company, Executor under the Last Will and Testament of Warren G. Horton, deceased”. It was a copy of this order of January 24, 1977 that was actually received by the New York executor by mail. It was the only notice of the hearing which gave rise to the order of the Connecticut Probate Court finding liability on the executor for overpaid trustee’s commissions.
It is significant to note that the Salamanca Trust Company, as executor of the estate of Warren G. Horton, did not appear in person or through an attorney in any proceeding in the Probate Court of Connecticut relative to the accountings of the Connecticut trustee. The stipulated facts indicate clearly *893 that the executor bank was in default of appearance in any and all such proceedings.
The only procedural device cited and/or discovered by this court which could possibly impose jurisdiction of the Connecticut Probate Court over the defaulting New York executor is section 52-59b of the General Statutes of Connecticut, Revision of 1958, Revised to 1975. It is the Connecticut "long arm” statute.
A summary of, that statute is set forth in Martindale Hubbell Law Directory of 1976 (vol VI, Law Digests, p 347) as follows: "Personal jurisdiction over nonresident individual or foreign partnership, or his or its executor or administrator, may be exercised where he or it, in person or through an agent: (1) Transacts business in state; or (2) commits tortious act other than defamation of character in state; or (3) commits tortious act outside state causing injury to person or property within state, if (a) regular doing or solicitation of business, persistent conduct, or revenue from within state, or (b) in interstate commerce, and expects or should expect act to have consequences in state; or (4) interest in real property in state. Jurisdiction based on any of these acts does not confer jurisdiction for unrelated cause of action. (52-59b). Constructive service on Secretary of State and registered or certified mailing to defendant’s last known address required (33-41 l[c], added by 52-59b).”
It is not claimed or argued that the New York executor committed a tortious act either within or without the State of Connecticut. The asserted legal basis for liability of the executor for the return of trust income voluntarily paid, but alleged to be subject to trustee’s commissions is unjust enrichment. The action or proceedings giving rise to the asserted liability is grounded in the areas of equity or quasi contract, not tort. Further, it is not asserted that the New York executor was engaged in business in the State of Connecticut, nor in interstate commerce. Similarly, it appears that the accounting proceeding did not involve real property within the State of Connecticut.
For the foregoing reason, it is the decision of this court that the provisions of the cited Connecticut "long arm” statute were wholly inapplicable to the proceeding held in the Probate Court of Connecticut on the final accounting of the trustee. Further, even if applicable, the procedural requirements of that statute were not met. This is for the reason that *894 constructive service was not effected on the Secretary of State of the State of Connecticut.
Turning then to the. primary defense which the executor has asserted, viz: defense of lack of jurisdiction of the Connecticut court and the nonapplication of the full faith and credit clause of the Federal Constitution, the court finds that such a defense is available. In Carmody-Wait 2d New York Practice (vol 10, § 67:14) and cases cited, it is stated: "[t]he full faith and credit clause of the Federal Constitution does not preclude a defense of want of jurisdiction over the subject matter or the parties, or of fraud, in an action upon a foreign judgment”. It is further stated: "a judgment against a defendant sued in a foreign state is void if no jurisdiction was acquired over the defendant’s person”. (10 Carmody-Wait 2d, NY Prac, § 67:22 and cases cited; to same effect see Pope v Heckscher, 266 NY 114; Grubel v Nassauer, 71 Misc 585, affd 148 App Div 891, affd 210 NY 149; Shepard v Wright, 113 NY 582; Matter of Law, 56 App Div 454; Harris v Equitable Sur. Co., 131 Misc 85.)
On the facts reviewed, the court finds the asserted defense of lack of jurisdiction over the person appropriate and applicable. It is allowed.
Not bound by the determination of the Connecticut Probate Court, a de novo consideration of the directions in the trust, which provided for the payment of trustee’s commissions, by this court is in order. That direction previously eliminated any commissions to the trustee for receiving or paying out principal or corpus of the trust. It provided only for trustee’s commissions on income. As to such income commissions it was provided that they "be computed in the same manner for receiving and paying out income as shall be provided for by the laws of the State of New York in force at the time of my death for the fees and commissions upon income of testamentary trusts in the State of New York”. (Emphasis added.)
The testator-settlor died March 5, 1936. The New York statute providing for trustee’s commissions at that time was subdivision 7 of section 285 of the former Surrogate’s Court Act. It provided: "If an executor acting as trustee, or if a trustee or guardian, is required to receive income and pay over the same, and such executor, trustee or guardian pays over said income and renders an annual account to the beneficiary of all his receipts and disbursements on account thereof, he shall be allowed, and may retain, the same com *895 mission on the amount so accounted for as he would be allowed upon principal on a judicial settlement; if he does not render such annual account, he shall be allowed, upon his judicial settlement, his commissions upon the total income from any money or property then payable to such beneficiary”.
The construction consistently given by New York courts to the quoted statute and the judicial resolution of the issue of waiver of commissions by payment of all income in 1936 and thereafter, has been that payment of all income by a trustee without reservation of commissions, amounts to a waiver of commissions on such income. (Spencer v Spencer, 38 App Div 403; Olcott v Baldwin, 190 NY 99, 109-110 cited, quoted and followed the decision of Spencer v Spencer, supra; Cook v Stockwell, 206 NY 481; Matter of Blake, 156 Misc 619 [Wingate, S.]; Matter of Nash, 160 Misc 642.) An excellent review of the New York statute referable to all trustee’s commissions and their historical development is set forth by Surrogate Keane in Matter of O’Neil (68 Misc 2d 634, 638-641). See in particular, the historical review of subdivision 7 of section 285 of the former Surrogate’s Court Act referable to commissions on income (pp 639-640), leading to the learned Surrogate’s conclusion (p 641): "From all of the foregoing discussion it is clear that no annual income commissions are payable in any year when all the income of that year has been disbursed”.
This court holds that the applicable principle of law of the State of New York in force at the death of the testator-settlor was that the payment of all trust income without reservation of trustee’s commissions on such income constituted a waiver of commissions on the income. The court further holds that the trust in issue, by its express terms, was made subject to this principle of law.
Since it is factually stipulated that the trustee did pay out all income, without reservation of commissions thereon, the determination of the court is that the claim of the trustee for the return of commissions is invalid, an order of the Probate Court of Connecticut to the contrary notwithstanding. Such order is void for the want of jurisdiction. Comity should not be accorded an order which improperly construes the applicable New York law. The claim of the trustee is rejected. Decision is for the executor.