OPINION OF THE COURT
Robert E. Fischer, J.
Defendant Eldred M. Hitchcock seeks to vacate an income execution issued pursuant to a foreign judgment filed in the Broome County Clerk’s office. Enforcement proceedings have been temporarily stayed pending the determination of this motion.
Plaintiff is a Pennsylvania banking institution and defendants are residents of Montrose, Pennsylvania. On December 1, 1978, a judgment in the sum of $4,560.27 was entered with *648 the Clerk of the Court of Common Pleas of Susquehanna County, Pennsylvania, in favor of plaintiff. Defendants’ appeal from that judgment to the Superior Court of Pennsylvania is still pending. The judgment remains unsatisfied and no security has been posted to stay enforcement pending appellate determination.
The Pennsylvania judgment was filed in the Broome County Clerk’s office on April 17, 1979, and the income execution, dated December 14, 1979, was served by the Broome County Sheriff’s Department on the employer of the defendant Eldred Hitchcock — "Public Service Chrysler-Plymouth” — an automobile dealership located in Binghamton, New York. Compliance with the income execution, which was to have commenced February 20, 1980, was temporarily stayed until we could determine the propriety of garnishment of wages in a State which permits this method of enforcement, but is predicated on a judgment obtained in a sister State whose century old (1845) public policy[1] prohibits the forced surrender of wages to satisfy money judgments.
The Pennsylvania judgment was filed in this State pursuant to CPLR article 54 — New York’s version of the Uniform Enforcement of Foreign Judgments Act — which provides in part: "The [county] clerk shall treat the foreign judgment in the same manner as a judgment of the supreme court of this state. A judgment so filed has the same effect and is subject to *649 the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of the supreme court of this state and may be enforced or satisñed in like manner.” (CPLR 5402, subd [b]; emphasis supplied.)
Pennsylvania has also enacted similar legislation in conformity with the Uniform Act (42 Pa Cons Stat Ann, § 4306) and its statute (subd [b]) contains identical language — "may be enforced or satisfied in like manner” — as its New York counterpart. Both States, therefore, have unilaterally determined to treat properly filed foreign judgments as their own, with execution thereon to be had according to the law of the forum State, not of the jurisdiction of rendition. That such might "improve the effect and finality” of the Pennsylvania judgment "over that accorded it” in Pennsylvania (Matter of Horton, 91 Misc 2d 885, 891) results from converting a foreign judgment to a domestic one. While certain effects of the conversion might be deemed "novel” or "bizarre” (Matter of Horton, supra), it should not be offensive to the State of rendition since the assets of the judgment debtor are within the jurisdiction of the State where the judgment is registered. So long as the judgment "is entitled to full faith and credit in this state” (CPLR 5401), it will be treated "in the same manner as a judgment of the supreme court of this state” (CPLR 5402, subd [b]; and see Overmyer v Eliot Realty [83 Misc 2d 694, 701-702] for a brief historical review of the New York provisions; and Thirteenth Annual Report of NY Judicial Conference [1968, p 248 et seq.] for a lengthier rationale and analysis of the Uniform Act).
The Uniform Enforcement of Foreign Judgment Acts has received "scant judicial interpretation” (Overmyer v Eliot Realty, supra, p 701), even though 15 years have elapsed since then Circuit Judge Blackman commented that the 1948 Federal version of the Uniform Act (US Code, tit 28, § 1963) "presents much to be answered in the future” (Stanford v Utley, 341 F2d 265, 271). In Stanford, the court upheld the viability of a judgment registered in the State of Missouri which had a 10-year Statute of Limitations even though it was incapable of enforcement in Mississippi, the Federal district of rendition, since that jurisdiction’s 7-year limitation period had expired. To Judge Blackman, the act of registering the foreign judgment created "the equivalent of a new judgment of the registration court” (supra, p 268). The rationale for that conclusion was expressed succinctly: "If registration is to *650 'have the same effect as a judgment’, it must, for our present enforcement purposes, mean just that and not something else. To restrict registration to a procedural and collection device for the foreign judgment itself, and to have it expire with the foreign judgment, would give the words of the statute a lesser status than their plain meaning and to make registration something far inferior to a judgment on a judgment * * * 'These are plain words and mean what they say. Congress did not intend any different meaning’ ” (supra, p 270).
In an analogous fact situation, but where the wages were earned in Pennsylvania and sought from the employer doing business and served in New York, the Court of Appeals (in a pre-Uniform Act decision) determined that the public policy of Pennsylvania forbidding income executions would not be applied: "The New York garnishment statutes are applicable to wages earned outside the State * * * Some cases in other States hold that, under rules of comity, the courts of one State will not permit garnishment of wages earned in another State where the laws of that other State prohibit garnishment * * * However, no New York authority to that effect is found and such a holding would be inconsistent with [a former decision of this court]. We must reach a decision here not on any rules of comity, but by construing our own statutes. The general rule is that questions of garnishment and attachment are decided by the law of the forum since they deal with remedies * * * Therefore, the Pennsylvania law forbidding garnishment of wages has no effect in New York, although the wages attached were earned in Pennsylvania.” (Morris Plan Ind. Bank of N. Y. v Gunning, 295 NY 324, 331-332.)
In the present matter, since the wages were earned in New York State, the holding of Morris Plan has even more meaning when considering the use of forum State remedies to reach forum State assets. Thus, we must consider the declared public policy of New York for those wage earners within its territorial jurisdiction, and income execution (CPLR 5231) is a statutory expression of that policy of assistance to judgment creditors.
We conclude, therefore, that plaintiff should be left to pursue the collection of its judgment. In doing so we note the statutes of Pennsylvania which provide that absent posting of security, judgment may be enforced in that jurisdiction (Pa Rules App Prac, 1701, 1731, 1735 [42 Pa CSA]). No security has been posted in this jurisdiction (CPLR 5404, subd [b]) and *651 as a consequence our temporary restraint order is terminated. The foreign judgment must be deemed final and be afforded such full faith and credit as is afforded our own judgments (see CPLR 5519 [subd (a)] as to stay of enforcement pending appeal by the filing of an undertaking).
We do note that if defendants deem our determination to be in error, or the public policy of Pennsylvania to be offended, they are not foreclosed from seeking relief, either in this State by way of appeal or in Pennsylvania by commencement of a plenary suit for treble damages (42 Pa CSA, § 8127, subd [c]). We further observe that although injunctive process is available in the Pennsylvania courts under that provision, we have not been advised that such recourse has been sought. Should such recourse be had, the courts of our sister State could define its public policy in relation to the garnishment of wages when the situs of both the employer and the wages are in a foreign jurisdiction.[2]
Defendants’ motion to vacate the income execution is, therefore, denied.

. The modern statute in Pennsylvania (42 Pa Cons Stat Ann, § 8127) reads as follows:
"§ 8127. Personal earnings exempt from process
"(a) General rule. — The wages, salaries and commissions of individuals shall while in the hands of the employer be exempt from any attachment, execution or other process except upon an action or proceeding for support or for board for four weeks or less.
"(b) Transfer of claim to avoid policy of the Commonwealth.- — It shall be unlawful for any creditor or obligee to commence an action on or to transfer any claim against a resident of this Commonwealth for the purpose of having such claim collected by proceedings in a forum which accords such resident less favorable exemptions from attachment or execution than are accorded by this Commonwealth, or for the purpose of depriving such resident of the right to have his personal earnings while in the hands of his employer exempt from application to the payment of his debts.
"(c) Remedy. — In addition to remedy by injunction or otherwise, a resident of this Commonwealth who is aggrieved by any action by a creditor or obligee in violation of subsection (b) shall have a right of action against the creditor or obligee for treble the amount recovered from such resident in violation of this section and reasonable counsel fees. The transfer of any claim against the resident and the commencement of any action thereon outside this Commonwealth shall be prima facie evidence of a purpose to violate the provisions of subsection (b).”

. Compare former section 2175 of title 12 of the Pennsylvania statutes, the predecessor to section 8127 (subd [b]) of title 42 of the Pennsylvania statutes, which specifically makes transfer outside of the Commonwealth unlawful where there is an intent to deprive a debtor of his personal earnings and "where the creditor and debtor and the person or corporation owing the money intended to be reached by such proceedings are within the jurisdiction of the courts of this Commonwealth”.